UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DIANE L. McNEILL, | No. ED CV 10-1090-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 23, 2010, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 9, 2010, and August 10, 2010. Pursuant to the Court's Order, the parties filed a Joint Stipulation on January 26, 2011, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on March 4, 1955. [Administrative Record ("AR") at 95.] She has an eleventh grade education, and has past relevant work experience as a retail store department manager. [AR at 114, 119, 693.]

On November 8, 2001, plaintiff filed her application for Disability Insurance Benefits, alleging that she has been disabled since May 31, 1988, due to lupus, fibromyalgia, interstitial cystitis, irritable bowel syndrome, rheumatoid arthritis, and other impairments. [AR at 95-97, 113.] After her application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 45-49, 51-55.] A hearing was held on March 12, 2003, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 615-49.] On July 10, 2003, the ALJ determined that plaintiff was not disabled. [AR at 33-44.] On December 16, 2005, the Appeals Council remanded the matter for further consideration by the ALJ. [AR at 75-77.] A different ALJ (the "2006 ALJ") held a hearing on April 6, 2006, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 650-68.] The 2006 ALJ held a subsequent hearing on September 14, 2006, at which time a medical expert testified. [AR at 669-84.] On October 16, 2006, the 2006 ALJ determined that plaintiff was not disabled. [AR at 10-19.] The Appeals Council denied plaintiff's request for review on June 9, 2008. [AR at 5-8.] Plaintiff then filed a civil action in this Court, which resulted in a Judgment of Remand pursuant to a Stipulation to Voluntary Remand. [AR at 706-09.] On remand, a different ALJ held a hearing on January 14, 2010, at which time a medical expert and a vocational expert testified. [AR at 747-78.] On March 25, 2010, the ALJ determined that plaintiff was not disabled. [AR at 685-95.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

1  If the claimant has a "severe" impairment or combination of impairments, the third step requires
2  the Commissioner to determine whether the impairment or combination of impairments meets or
3  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,
4  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.
5  If the claimant's impairment or combination of impairments does not meet or equal an impairment
6  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has
7  sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled
8  and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to
9  perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a
10 prima facie case of disability is established.  The Commissioner then bears the burden of
11 establishing that the claimant is not disabled, because she can perform other substantial gainful
12 work available in the national economy.  The determination of this issue comprises the fifth and
13 final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828
14 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff did not engage in any substantial gainful activity during the period from her alleged onset date of May 31, 1988, through her date last insured (for purposes of Disability Insurance Benefits) of December 31, 1993.  [AR at 690.] At step two, the ALJ concluded that plaintiff has the following severe impairments:  "history of gallbladder disease consistent with cholelithiasis, resulting in cholecystectomy; and complaints of pelvic and neck pain."  [Id.]  At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing.  [AR at 691.]  The ALJ further found that

plaintiff retained the residual functional capacity ("RFC")[1] to perform light work[2] with certain limitations: "she can stand and walk two hours in an eight-hour workday with normal breaks every two hours; perform occasional postural activities; do occasional neck motion, but should avoid extremes of motion; should hold her head in [a] comfortable position most of the time; and can maintain a fixed head position for 15 to 30 minutes at a time, occasionally." [Id.] At step four, the ALJ concluded that plaintiff is unable to perform any past relevant work. [AR at 693.] At step five, the ALJ determined that plaintiff can perform jobs that exist in significant numbers in the national economy, specifically order clerk, bench assembler, charge account clerk, and optical assembler. Accordingly, the ALJ found plaintiff not disabled. [AR at 693-95.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ (1) erred in evaluating all of the relevant medical evidence; (2) improperly evaluated plaintiff's credibility; and (3) improperly evaluated the credibility of a lay witness. [Joint Stipulation ("JS") at 5-14, 17-21.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.     PHYSICIANS' OPINIONS**

Plaintiff argues that the ALJ erred in evaluating the opinions of two physicians, Dr. Ziad R. Sawan and Dr. Franklin Kozin. [JS at 6-14.] The Court agrees.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

---

[1]     RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]     Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. Where a treating physician's opinion does not contradict other medical evidence, an ALJ must provide clear and convincing reasons to discount it. An ALJ may afford less weight to a treating physician's opinion that conflicts with other medical evidence only if the ALJ provides specific and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citation omitted); Social Security Ruling[3] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected). Similar rules apply to an ALJ's evaluation of an examining physician's opinion. Lester, 81 F.3d at 830-31.

    **1.    Dr. Sawan**

In a letter dated February 6, 2002, Dr. Sawan opined that plaintiff has been "totally disabled from work" since he started treating her "about 8 years" earlier. [AR at 159.] Dr. Sawan stated, among other things, that plaintiff "has been suffering from serious medical problems which have really devastated her life"; "has been diagnosed with lupus . . . and has been plagued with severe arthritis and muscle aches"; "has chronic abdominal pain related to her lupus, and pelvic adhesions"; has interstitial cystitis and a history of fibromyalgia, Raynaud's disease, and Grave's

---

[3] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

disease; and "has had [gallbladder] disease consistent with choleylithiasis." He emphasized that plaintiff "is in no condition to work at all" and "is totally disabled." [Id.]

Because Dr. Sawan's opinion was contradicted by other medical opinions,[4] the ALJ was required to provide specific and legitimate reasons to reject it. Although the ALJ provided two reasons in support of his rejection of Dr. Sawan's opinion, they are not legally sufficient. First, seizing on the language that Dr. Sawan had known plaintiff for "about 8 years" as of his February 2002 letter [AR at 159], the ALJ concluded that Dr. Sawan "did not know [plaintiff] on or before the date last insured" of December 31, 1993. [AR at 692.] The evidence of record belies this conclusion. Dr. Sawan first treated plaintiff on October 6, 1993. [AR at 240.] He treated her several additional times prior to December 31, 1993, including to perform her cholecystectomy. [AR at 233-35, 237.] The ALJ's conclusion that Dr. Sawan did not treat plaintiff before her date last insured reflects a misreading of or an improper selective consideration of the evidence. See Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (error for ALJ to "selectively focus[ ] on . . . [evidence] which tend[s] to suggest non-disability"); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for ALJ to ignore or misstate competent evidence in order to justify his conclusion). This reason therefore does not suffice to discount Dr. Sawan's opinion.[5]

The 2006 ALJ, who also erroneously stated that Dr. Sawan "did not begin treating [plaintiff] until 1994," provided a second reason for discounting his opinion: "Dr. Sawan references no clinical or diagnostic findings in support of his opinion."[6] [AR at 18.] However, the record contains a great deal of medical evidence from Dr. Sawan and his colleagues. [AR at 159-288, 332-415,

---

[4] For example, non-examining medical expert Dr. Samuel Landau testified that, prior to her date last insured, plaintiff had the RFC that the ALJ ultimately adopted. [AR at 691, 693, 762-63.]

[5] As the ALJ noted, Dr. Sawan cited "medical records document[ing plaintiff's] gallbladder disease up to 1992." [AR at 692.] The ALJ determined that these records do not bolster Dr. Sawan's opinion of disability because "medical records show no complications from the cholecystectomy." [AR at 692.] Because Dr. Sawan treated plaintiff prior to December 31, 1993, he did not need to rely on other medical records to support his opinion. The ALJ's reasoning therefore fails to discredit Dr. Sawan's opinion.

[6] The ALJ incorporated into his decision the 2006 ALJ's analysis of "the objective medical evidence" and "the medical source opinions." [AR at 691-92.]

528-63.] Without additional explanation, the 2006 ALJ's observation that Dr. Sawan did not cite specific findings to support his opinion fails to reach the level of specificity required for rejecting Dr. Sawan's treating opinion. See Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required . . . . The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (footnote omitted).

Remand is warranted for the ALJ to properly evaluate Dr. Sawan's opinion.

**2.    Dr. Kozin**

Dr. Kozin evaluated plaintiff for litigation unrelated to her application for disability benefits. [AR at 588-92 (medical evaluation for "Silicone Breast Implant Litigation").] In his report dated August 14, 1994, Dr. Kozin wrote, among other things, that plaintiff experiences musculoskeletal symptoms including "back pain, puffy and tender proximal interphalangeal joints in the hands, muscle cramps in the abdomen, and moderately severe fatigue"; "has anxiety and depression and has been told of irritable bowel syndrome"; bruises easily; has "difficulty with balance"; is "unable to work because she is 'too tired all the time and has too much trouble with spastic bowel and urinary tract infections'"; and has "[m]yofascial tender points . . . throughout the neck, shoulder girdle region, lateral epicondyles and buttock areas." He diagnosed plaintiff with "[a]typical [r]heumatic [s]yndrome" and noted "[s]he presents with a fairly typical picture of fibromyalgia which can be quite disabling generally and is particularly disabling in this patient." Dr. Kozin concluded that plaintiff "is unable to work at the present time because of severe fatigue and myalgias and arthralgias." [Id.]

Like Dr. Sawan's opinion, Dr. Kozin's opinion that plaintiff was disabled was contradicted by other medical opinions, requiring the ALJ to provide specific and legitimate reasons to reject it. Although the ALJ provided several reasons for discounting Dr. Kozin's opinion, they are not legally sufficient. First, the ALJ concluded that Dr. Kozin based his opinion on plaintiff's subjective complaints, rather than objective clinical findings. [AR at 692-93.] A physician's opinion may be

rejected if it is based on a claimant's subjective complaints which were properly discounted. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989). As discussed below, however, the ALJ erred in his adverse credibility determination. Thus, even if Dr. Kozin's opinion was based solely on plaintiff's subjective complaints, this reason does not suffice to discount his opinion.

Related to the first reason, the ALJ also stated that Dr. Kozin did not "conduct[] a tender points tests or other tests . . . to support a fibromyalgia diagnosis or other medically determinable impairment." [AR at 692-93.] As noted above, however, Dr. Kozin found "[m]yofascial tender points . . . throughout the neck, shoulder girdle region, lateral epicondyles and buttock areas." [AR at 589.] Moreover, the medical expert, Dr. Landau, testified that Dr. Kozin "would have been entitled to diagnose fibromyalgia syndrome on the basis of this examination," and that "what [he] [Dr. Landau] saw was consistent with that diagnosis." [AR at 758, 761.] An "ALJ may not substitute his own layman's opinion for the findings and opinion of a physician." Gonzalez Perez v. Sec'y of Health & Human Servs., 812 F.2d 747, 749 (1st Cir. 1987); see also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (an ALJ may not reject a physician's opinion based on "speculation or lay opinion"). The ALJ's opinion that the evidence did not support Dr. Kozin's diagnosis of fibromyalgia is contradicted by Dr. Kozin's own report and Dr. Landau's testimony. This reason does not suffice to discount Dr. Kozin's opinion.

Finally, the 2006 ALJ rejected Dr. Kozin's opinion because it was "self-serving [evidence] created for the purpose of civil litigation and financial gain." [AR at 18.] In the absence of evidence of actual impropriety on the part of Dr. Kozin, this observation does not constitute a specific and legitimate reason to discount Dr. Kozin's opinion. See Lester, 81 F.3d at 832. "The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." Id. That Dr. Kozin evaluated plaintiff in the context of civil litigation -- seven years before plaintiff applied for disability benefits -- is not a valid reason to discount his opinion.

Remand is warranted for the ALJ to properly evaluate Dr. Kozin's opinion.

9

**B.     PLAINTIFF'S CREDIBILITY**

Plaintiff next contends that the ALJ erred in evaluating her credibility. [JS at 17-21.] The Court agrees.

At the 2003 hearing, plaintiff testified that, prior to her date last insured, she could not do housework independently because she tired easily and had abdominal pain; she needed assistance putting on some types of clothing because of shoulder pain; she had difficulty cooking because she could not lift heavy pots or peel potatoes; she could not push a grocery cart, reach items on high shelves, or lift grocery bags into her car due to hand and shoulder pain; she had trouble concentrating due to joint pain; she could not reliably drive herself even short distances because she became fatigued and needed assistance getting into the car; nausea, difficulty concentrating, difficulty standing, and muscle weakness prevented her from working; she needed to rest often; she experienced photosensitivity; and she had difficulty manipulating objects due to rheumatoid arthritis. [AR at 625-48 (discussing Plaintiff's Daily Activities Questionnaire [AR at 137-42]).] Plaintiff gave similar testimony at her second hearing in 2006. [See AR at 657-65.]

Whenever an ALJ discredits a claimant's testimony regarding subjective symptoms, including degree of pain and functional limitations, the ALJ must make explicit credibility findings. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make specific findings rejecting it). The ALJ can reject a claimant's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms when there is medical evidence of an underlying impairment). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R.

§§ 404.1529(c), 416.929(c). "It's not sufficient for the ALJ to make only general findings." Dodrill, 12 F.3d at 918. Absent evidence showing that a plaintiff is malingering, the ALJ must clearly identify evidence in the record undermining the plaintiff's testimony to properly discredit her alleged limitations. See id.; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting Lester, 81 F.3d at 834). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

In this case, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms were "not credible to the extent they are inconsistent with the . . . [RFC] assessment." [AR at 692.] As the record contains no evidence of malingering by plaintiff,[7] the ALJ was required to justify his credibility determination with clear and convincing reasons. See Benton, 331 F.3d at 1040. The ALJ's reasons for rejecting plaintiff's subjective symptom testimony do not meet this standard.

The ALJ provided several reasons to support his adverse credibility determination.[8] First, the ALJ found that the objective medical evidence did not support the degree of limitation that plaintiff alleged. [AR at 17.] An ALJ may consider whether the objective medical evidence supports the degree of limitation alleged by a claimant, but this "cannot form the sole basis for discounting [subjective] testimony." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). Thus, even assuming the ALJ's characterization of the medical evidence is supported by substantial evidence, the ALJ may rely upon this rationale only if his other reasons for discounting plaintiff's credibility are proper. They are not.

---

[7] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

[8] The ALJ incorporated into his decision the 2006 ALJ's analysis of plaintiff's "alleged symptoms and limitations." [AR at 691-92.]

11

Next, the 2006 ALJ observed that "[p]rior to December 31, 1993, no physician imposed any significant restrictions on [plaintiff]; and nor did any physician state that [plaintiff] was disabled." [AR at 18.] The ALJ did not explain why he would have expected a physician to impose any restriction on plaintiff prior to her date last insured. As plaintiff has not worked since 1989 [AR at 97] and did not apply for disability benefits until 2001, there likely was little reason for a physician to impose "significant restrictions" on her prior to December 31, 1993. Furthermore, the ALJ's statement that no physician stated plaintiff was disabled prior to her date last insured ignores Dr. Sawan's opinion. As discussed above, Dr. Sawan began treating plaintiff in October 1993, and opined in 2002 that plaintiff had been "totally disabled from work" during the eight years he had been treating her. [AR at 159.] The ALJ's statements that no physician imposed significant limitations on plaintiff or stated that she was disabled before her date last insured do not clearly and convincingly detract from her credibility.

The 2006 ALJ also stated that "the impairments [plaintiff] did have prior to [December 31, 1993] were controlled by medication or other treatment." [AR at 18.] The 2006 ALJ cited no evidence to support this statement, which is contradicted by Dr. Sawan's improperly rejected opinion that plaintiff was "totally disabled from work" during the time of the treatment. [AR at 159.] Without further explanation, this reason does not reach the level of specificity required to clearly and convincingly discount a claimant's testimony. See Smolen, 80 F.3d at 1281; Dodrill, 12 F.3d at 918.

In addition, the ALJ stated that the medical evidence did not support the existence or severity of several of plaintiff's alleged impairments. [AR at 17-18 (finding that plaintiff's medically determinable impairments of endometriosis, Reynaud's sign, and hyperthyroidism were not severe prior to December 31, 1993, and that her alleged impairments of fibromyalgia, lupus, and irritable bowel syndrome were not medically determinable prior to December 31, 1993), 692 (citing medical expert's testimony that "there is no objective basis for irritable bowel syndrome").] This reasoning fails to detract from plaintiff's credibility. First, the ALJ did not specifically identify what symptom testimony was undermined by his findings as to these alleged impairments. As mentioned above, the ALJ determined that plaintiff's "medically determinable impairments could reasonably be

expected to cause the alleged symptoms." [AR at 692.] Therefore, without an explanation as to what alleged symptoms are undermined by the non-existence or non-severity of these alleged impairments, this reason is not specific enough to sustain the ALJ's adverse credibility determination. See Reddick, 157 F.3d at 722 ("General findings are not sufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (internal quotation marks and citation omitted); cf. Smolen, 80 F.3d at 1290 (9th Cir. 1996) ("[T]he ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." (citing 42 U.S.C. § 423(d)(2))). Moreover, the ALJ's findings as to certain impairments appear to be erroneous. As discussed above, Dr. Kozin's own report and the medical expert's testimony substantiate plaintiff's alleged impairment of fibromyalgia. [See AR at 589, 758, 761.] Similarly, the ALJ appears to take the medical expert's testimony out of context in rejecting plaintiff's alleged impairment of irritable bowel syndrome. The ALJ stated that Dr. Landau "testified there is no objective basis for irritable bowel syndrome through the date last insured." [AR at 692.] However, Dr. Landau appeared to testify that the diagnosis of irritable bowel syndrome "does not have an objective basis" in general, not just as to plaintiff. In response to the ALJ's question if there was "any evidence that [plaintiff] had severe irritable bowel syndrome as of 1993," Dr. Landau testified that "irritable bowel syndrome . . . does not have an objective basis . . . there's no disease in irritable bowel syndrome." [AR at 761.] Therefore, any lack of objective evidence does not refute plaintiff's allegation that she suffered from irritable bowel syndrome. Moreover, Dr. Landau testified that plaintiff's complaints of diarrhea and constipation evidenced her irritable bowel syndrome [id.], and, as discussed herein, the ALJ did not properly reject plaintiff's credibility. In sum, the supposed non-existence or non-severity of certain alleged impairments does not clearly and convincingly detract from plaintiff's credibility.

Finally, the 2006 ALJ wrote that plaintiff "has a poor work history reflective of low earnings," which "is indicative that [plaintiff] is making a lifestyle choice not to work that is unrelated to her physical impairments." [AR at 18.] As support for this assertion, the 2006 ALJ wrote that "[b]etween 1987 and 1988 [plaintiff] . . . never earned more than $8,251.95 in a 12 month period."

13

[Id. (citing AR at 99).] Although an ALJ may consider a claimant's "extremely poor work history" in assessing her credibility, Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002), here the ALJ's cursory summary of plaintiff's work history, without more, does not clearly and convincingly detract from her credibility. Plaintiff acknowledged in her application that she "did not work prior to 1972, nor in 1975-1976, 1979-1983, [or since] 1989" [AR at 97], but none of the ALJs asked plaintiff to explain why she did not work more extensively. Any number of economic, social or practical factors could account for plaintiff's limited work history. Moreover, despite having several periods of unemployment in her lifetime, including the current one that commenced in 1989, plaintiff did not apply for disability benefits until 2001. Without additional exploration of the issue, plaintiff's limited work history does not clearly and convincingly detract from her credibility. See Lewis v. Astrue, 2010 WL 3701782, at *5 (C.D. Cal. Sept. 14, 2010) (holding that the claimant's "spotty work history" did not amount to "a clear and convincing reason for rejecting [his] credibility").

Remand is warranted for the ALJ to properly assess plaintiff's credibility.

**C.  LAY WITNESS STATEMENT**

Finally, plaintiff argues that the ALJ's rejection of a lay witness statement was improper. [JS at 20-21.] The Court disagrees.

Plaintiff's daughter-in-law, Jessica Thomas, completed a Daily Activities Questionnaire dated December 4, 2001. [AR at 143-48.] Ms. Thomas stated, among other things, that plaintiff was unable to drive "due to lupus of the brain"; required assistance with housework, cooking, and running errands; sometimes experienced "sleepless nights due to disease"; was not active in community groups "due to illnesses"; could not attend as many social gatherings as she would like to; and occasionally had trouble concentrating. [Id.] The ALJ rejected Ms. Thomas's statement because "it was signed and dated almost eight years after the claimant's date last insured and does not specifically address the claimant's daily activities on or before that date." [AR at 692.]

The ALJ's rejection of Ms. Thomas's statement was proper. Lay witness testimony by those who have the opportunity to observe a claimant on a daily basis "constitutes qualified

evidence" that the ALJ must consider. See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); Smolen, 80 F.3d at 1289 (testimony from lay witnesses, who see the plaintiff on a daily basis and are often family members, is of particular value); Dodrill, 12 F.3d at 919 ("An eyewitness can often tell whether someone is suffering or merely malingering. . . . [T]his is particularly true of witnesses who view the claimant on a daily basis."). However, the ALJ may discount the testimony of lay witnesses for "reasons that are germane to each witness." Dodrill, 12 F.3d at 919; Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999). Here, as the ALJ noted [AR at 689], plaintiff was required to establish that she was disabled on or before her date last insured, December 31, 1993. See 42 U.S.C. § 423(a)(1). The ALJ properly observed that Ms. Thomas's statement, written eight years later, did not address the relevant time period. [See AR 143-48.] This constitutes a germane reason to discount Ms. Thomas's statement. See, e.g., Elliott v. Astrue, 2010 WL 3732297, at *4 (D. Or. Sept. 20, 2010) ("Because plaintiff must prove his disability prior to the expiration of his insured status, the ALJ's decision to focus on the relevant time period is a germane reason for dismissing the lay witness testimony.") (citation omitted). The ALJ did not err.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to properly assess the credibility of plaintiff's symptom testimony and to reevaluate Dr. Sawan's and Dr. Kozin's opinions. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

/
/
/

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: March 14, 2011

                        PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE